**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                          No. 95-5132

CUONG KIM TU,
Defendant-Appellant.

Appeal from the United States District Court
for the Western District of North Carolina, at Charlotte.
Graham C. Mullen, District Judge.
(CR-94-59-MU)

Submitted: September 29, 1998

Decided: October 28, 1998

Before LUTTIG and WILLIAMS, Circuit Judges, and
BUTZNER, Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Joseph F. Lyles, Milton Gordon Widenhouse, Charlotte, North Caro-
lina, for Appellant. Mark T. Calloway, United States Attorney, Robert
J. Conrad, Jr., Assistant United States Attorney, Charlotte, North Car-
olina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Following a guilty plea, Cuong Kim Tu was convicted on one count of conspiracy to commit bank fraud, in violation of 18 U.S.C. § 371 (1994). The district court sentenced Tu to forty-one months in prison. Tu appeals, contending that the district court improperly attributed to him for sentencing purposes losses in excess of $200,000. We find no clear error in the district court's determination; consequently, we affirm.

Tu pled guilty to participating in a scheme to defraud banks through the use of counterfeit checks. Specifically, participants in the conspiracy created counterfeit checks using the names of corporate accounts of the victim banks. These checks were made payable to particular coconspirators and were drawn on the victim banks' client accounts. Operating out of Los Angeles, the conspiracy was comprised of "cells" that would travel throughout the United States. Within the cell in which Tu was involved were three levels of coconspirators: managers, like Tu, who controlled airline tickets and prepared the counterfeit documents; individuals who drove check-passers to obtain false identification and to cash the counterfeit checks; and check-passers who actually cashed the checks. The cell made a January 1994 trip to Seattle netting $146,000, a March 1994 trip to Boston netting $73,000, and a subsequent March 1994 trip to Charlotte from which evidence showed the conspiracy intended to net $6232.

Although Tu only participated in the trip to Charlotte, evidence was presented showing that in November 1993 Tu introduced Pha Tan Tran to Tu's brother, who happened to be the ringleader of the conspiracy, and that shortly thereafter, Tran became involved in the conspiracy as a driver. Furthermore, when Tu was arrested at the airport in Charlotte, he was carrying the airline tickets for the other

2

members of the conspiracy. Evidence also showed that Tu prepared the false checks and handled the financial matters for the Charlotte trip. The district court attributed to him for sentencing purposes losses from all three trips, totaling over $200,000. On appeal, Tu contends that only the amount of losses from the Charlotte trip should be attributed to him, arguing that there is no evidence that he joined the conspiracy prior to that trip.

District courts may take "relevant conduct" into account in determining a defendant's sentence whether or not the defendant has been convicted of the charges constituting the relevant conduct. See U.S. Sentencing Guidelines Manual § 1B1.3 (1994); United States v. Jones, 31 F.3d 1304, 1316 (4th Cir. 1994). Under guideline section 1B1.3(a)(1) and (a)(2), in offenses that may be grouped under guideline section 3D1.2(d), a defendant's relevant conduct includes all his acts during the offense of conviction and those acts which were part of the same course of conduct or common scheme or plan. Two or more offenses are part of a common scheme or plan if they involve common victims, accomplices, purposes, or similar modus operandi. Two or more offenses are part of the same course of conduct if they are part of a single episode, a spree, or an ongoing series of offenses. Factors to consider are the similarity of the offenses, the time interval between them and, possibly, the nature of the offenses. See U.S.S.G. § 1B1.3, comment. (n.9); see also United States v. Mullins, 971 F.2d 1138, 1144 (4th Cir. 1992) (court should consider similarity, regularity, and temporal proximity of offenses). We review the district court's factual determination that separate offenses are part of the same course of conduct or a common scheme or plan under the clearly erroneous standard. See Mullins, 971 F.2d at 1143.

Based on these criteria, we find that the district court did not clearly err by attributing to Tu losses from the Boston and Seattle trips. These trips were in close temporal proximity to the Charlotte trip and involved many of the same co-conspirators under the direction of Tu's brother. Moreover, the modus operandi were identical. Thus, there was sufficient evidence for the district court to consider the losses from the Boston and Seattle trips as relevant conduct for purposes of sentencing Tu.

3

For these reasons, we affirm Tu's sentence.* We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

<u>AFFIRMED</u>

_____

*The Government contends that, in his plea agreement, Tu waived his right to a direct criminal appeal. However, the plea agreement addresses only waiver of the right to challenge Tu's conviction or sentence in any post-conviction proceeding. Consequently, we reject the Government's contention.

4